SELMA B. KRUPP & others *vs.* BUILDING COMMISSIONER OF NEWTON & another.

Middlesex.   April 3, 1950. — April 27, 1950.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Building Laws. Board of Standards. Constitutional Law,* Separation of powers of government, Delegation of powers, Separable portions of statute.

The provisions of G. L. (Ter. Ed.) c. 143, § 3J, inserted by St. 1947, c. 631, § 1, requiring the board of standards to establish "alternatives" to the materials and type or method of construction prescribed by local building laws, sufficiently laid down a general policy and adequate standards to be observed by the board, and the delegation therein to the board of the working out of the details was not a violation of art. 30 of the Declaration of Rights.

No hearing is required before action by the board of standards in establishing "alternatives" under G. L. (Ter. Ed.) c. 143, § 3J, inserted by St. 1947, c. 631, § 1; such action is a part of the legislative process and is not judicial in nature.

In a proceeding involving the constitutionality of G. L. (Ter. Ed.) c. 143, § 3J, and the first paragraph of § 3K, both inserted by St. 1947, c. 631, § 1, the provisions of the second paragraph of § 3K, added by St. 1948, c. 438, § 2, and amended by St. 1949, c. 530, were held to be separable and were not considered.

PETITION, filed in the Superior Court on October 17, 1949, and afterwards amended, for a writ of mandamus.

The petition contained averments of unconstitutionality

of G. L. (Ter. Ed.) c. 22, § 13, as redrafted by St. 1945, c. 645, § 1, and amended by St. 1945, c. 722, § 3, and by St. 1946, c. 522; of G. L. (Ter. Ed.) c. 143, § 3J, inserted by St. 1947, c. 631, § 1; and of G. L. (Ter. Ed.) c. 143, § 3K, inserted by St. 1947, c. 631, § 1, and amended by St. 1948, c. 438, § 2, and by St. 1949, c. 530. The grounds of such averments were as follows:

A. That such statutory provisions are contrary to art. 30 of the Declaration of Rights "as an invalid delegation of legislative power in that: (1) the standard therein set forth, under which the board of standards must act, is so vague, ambiguous, and indefinite, as to constitute no standard at all; (2) the board of standards is not required to find that any standard issued by it has complied with such legislative standard; (3) the statute prescribes the delegation of legislative authority to nonexperts who must then act under standards which, if they have any meaning, can be interpreted and acted under, only by experts; (4) the statute provides that a board of nonexperts shall have authority to waive the ordinances of a municipality, under standards which differ from those therein prescribed for action by the municipality; and (5) the statute grants to any applicant 'if the applicant submits a statement in writing, accompanied by an affidavit from a registered engineer' stating that the standard set forth in the statute will be met, the right to avoid not only the ordinances of the municipality, but also any standards which the board of standards may have promulgated";

B. That they are contrary to art. 20 of the Declaration of Rights "in that violation of the ordinances of the city of Newton issued under the authority of G. L. (Ter. Ed.) c. 143, § 3, are subject to criminal penalties, as therein provided, and the aforesaid statutes grant to a board of nonexperts, known as the board of standards, or to any applicant for a permit, if supported by the affidavit of any registered engineer, power to suspend the operation of the aforesaid ordinances of the city of Newton and to avoid the criminal penalty for violation of said ordinances."

C. That they are contrary to art. 11 of the Declaration of Rights "guaranteeing equal protection of the laws, in that violation of the ordinances of the city of Newton issued under the authority of G. L. (Ter. Ed.) c. 143, § 3, are subject to criminal penalties, as therein provided, and the aforesaid statutes grant to a board of nonexperts, known as the board of standards, or to any applicant for a permit, if supported by the affidavit of any registered engineer, power to suspend the operation of the aforesaid ordinances of the city of Newton and to avoid the criminal penalty for violation of said ordinances."

Demurrers to the petition were heard by *Hanify,* J., and were sustained.

*H. Brown,* for the petitioners.

*H. Rubin,* for the respondents.

LUMMUS, J. This is a petition filed October 17, 1949, by eighteen residents of Newton, owning residential property near the property of Beacon Construction Company, for a writ of mandamus. The petition alleges the following. Beacon Construction Company owns three lots of land in Newton. It applied to the city of Newton for three permits to build on said several lots "light gauge structural steel prefabricated houses, porcelain finish, commonly referred to as 'Lustron' houses." Permits accordingly were issued on September 9, 1949. The steel to be used in said houses is not as thick as is required by the city ordinances.

By G. L. (Ter. Ed.) c. 22, § 13, as redrafted by St. 1945, c. 645, § 1, and amended by St. 1945, c. 722, § 3, and by St. 1946, c. 522, a board of standards was created. General Laws (Ter. Ed.) c. 143, § 3J, inserted by St. 1947, c. 631, § 1, provides that "The board of standards shall make and, from time to time, may amend, alter or repeal, regulations setting forth alternatives to the materials and to the type or method of construction, specified in the requirements contained or to be contained in any ordinance, by-law, rule or regulation, or in any special law applicable to a particular city or town, relating to the construction, reconstruction, alteration, repair, demolition, removal, use or occupancy,

and to the standards of materials to be used in such construction, reconstruction, alteration, repair, demolition, removal, use or occupancy, of buildings or other structures used for dwelling purposes in any city or town, . . . such regulations to be so drafted that such alternatives shall provide adequate performance for the purposes for which their use is intended, such adequate performance to be determined in conformity to accepted standards of engineering practice as to the materials and type or method of construction therein referred to, or any of them." General Laws (Ter. Ed.) c. 143, § 3K, inserted by St. 1947, c. 631, § 1, and amended by St. 1948, c. 438, § 2, and St. 1949, c. 530, provides as follows: "In cases where the plans and specifications accompanying an application fail to comply with the provisions of ordinances, by-laws or regulations, or any special law applicable to a particular city or town and relative to such construction, reconstruction, alteration, repair, demolition, removal, use or occupancy, an inspector of buildings shall issue a permit or certificate for such construction, reconstruction, alteration, repair, demolition, removal, use or occupancy if said plans and specifications comply with the alternatives set forth in the regulations referred to in section three J.

"In cases in which the plans and specifications accompanying an application fail to comply with the provisions referred to in the first paragraph of this section, and existing regulations setting forth alternatives, as provided in section three J, do not apply, in whole or in part, to those portions of such plans and specifications as fail to comply with said provisions, an inspector of buildings shall issue a permit or a certificate if the applicant submits a statement in writing, accompanied by an affidavit from a registered engineer, that the portions of such plans and specifications which fail so to comply and to which existing regulations setting forth alternatives cannot be applied, provide adequate performance for which their use is intended, such adequate performance to be determined in conformity to accepted standards of engineering practice."

The petition alleges that on February 16, 1949, the board of standards under § 3J promulgated Standard 4 authorizing the construction of metal prefabricated houses, that the plans and specifications submitted by the Beacon Construction Company complied with said Standard 4, and that the permits issued to it by the building commissioner were issued under the first sentence of § 3K. The petition alleges that the statutory provisions for a board of standards are unconstitutional. It prays for a writ of mandamus commanding the building commissioner to revoke said permits.

The building commissioner, and the Beacon Construction Company, which had been made a respondent, demurred, on the grounds that (1) the petitioners have no standing to bring the petition, (2) they have a plain, adequate and complete remedy in equity, and (3) they state no case for relief. The demurrers were sustained, and the petitioners appealed.

Article 30 of the Massachusetts Declaration of Rights provides that "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men." The general power to legislate cannot be delegated. *Brodbine* v. *Revere*, 182 Mass. 598, 600. *Boston* v. *Chelsea*, 212 Mass. 127, 128. But when the Legislature has adopted a policy it may delegate to a board or an officer the working out of the details of that policy. *Commonwealth* v. *Hudson*, 315 Mass. 335, 341, 342. *Opinion of the Justices*, 315 Mass. 761, 768. *Lynch* v. *Commissioner of Education*, 317 Mass. 73, 80. *Schaffer* v. *Leimberg*, 318 Mass. 396, 400. *Scannell* v. *State Ballot Law Commission*, 324 Mass. 494, 501. A common instance of such delegation is the delegation to municipalities of the power to make ordinances and by-laws. *Brodbine* v. *Revere*, 182 Mass. 598, 600.

In § 3J the power given to the board of standards to make regulations is limited to providing alternatives to the materials and types of construction of dwelling houses specified in some preëxisting ordinance, by-law or special act applicable to the particular city or town. Such alternatives must provide "adequate performance for the purposes for which their use" is intended, in conformity to "accepted standards of engineering practice." We think that in this respect the Legislature has sufficiently laid down the general policy to be followed, so that the working out of the details of that policy may constitutionally be left to the board of standards. *Norcross* v. *Board of Appeal of Boston*, 255 Mass. 177, 186. *Opinion of the Justices*, 321 Mass. 759, 765. "The principles for guiding the board and the standards to be observed by the board are adequately stated in the . . . [statute] with as much certainty as the nature of the subject matter reasonably permits." *Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273, 281–282. Since the action of the board of standards is a part of the legislative process, and not judicial in nature, no hearing is required. *Commonwealth* v. *Sisson*, 189 Mass. 247, 252. *Commonwealth* v. *Hudson*, 315 Mass. 335, 342.

The present case does not involve the provisions of § 3K, second paragraph, requiring the issuance of a permit upon the submission of a statement in writing accompanied by an affidavit from a registered engineer. Those provisions were introduced into the statute by St. 1948, c. 438, § 2. In *Commonwealth* v. *Petranich*, 183 Mass. 217, 220, Knowlton, C.J., said, "It is an established principle that where a statutory provision is unconstitutional, if it is in its nature separable from the other parts of the statute, so that they may well stand independently of it, and if there is no such connection between the valid and the invalid parts that the Legislature would not be expected to enact the valid part without the other, the statute will be held good, except in that part which is in conflict with the Constitution." That principle has never been denied, and has often been applied. *Edwards* v. *Bruorton*, 184 Mass. 529. *Commonwealth* v. *An-*

*selvich,* 186 Mass. 376, 379.   *Mutual Loan Co.* v. *Martell,* 200 Mass. 482, 487.   *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 81.   *Lawton Spinning Co.* v. *Commonwealth,* 232 Mass. 28, 32.   *Worcester County National Bank, petitioner,* 263 Mass. 444, 460, 461.   *Boston Elevated Railway* v. *Commonwealth,* 310 Mass. 528, 558, 559.   *Quinlan* v. *Cambridge,* 320 Mass. 124, 132.   We need not and do not consider the constitutional validity of the second paragraph of § 3K, because even if invalid it was adopted separately in 1948, and it is not to be supposed that the Legislature intended the preëxisting parts of the statute to fall if the amendment made in 1948 should prove unconstitutional.

Since the sustaining of the demurrers must be affirmed on the ground that the petition states no ground for relief, we need not consider the other two grounds of demurrer.

*Orders sustaining demurrers affirmed.*