THE TRUSTEES OF THE STIGMATINE FATHERS, INC. *vs.*
SECRETARY OF ADMINISTRATION AND FINANCE & others.

Middlesex.	December 4, 1975. — January 14, 1976.

Present: REARDON, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Practice, Civil,* Appeal, Relief from judgment or order, Judgment, Parties. *Collateral Estoppel. Evidence,* Of value. *Value.*

In an action for a declaration of rights under a contract for the purchase of land by the Board of Trustees of State Colleges, for which the Secretary of Administration refused to make funds available, there was no abuse of discretion in the denial of the Secretary's motion for relief from a judgment declaring the contract valid, brought on the ground that an appraisal report requested by the Secretary pursuant to St. 1971, c. 976, § 2B, was insufficient, where the Secretary had initially failed to disclose the existence of the appraisal to the plaintiff, counsel for the Board of Trustees had consented to a decree that the appraisal satisfied the statute, the Secretary's answer admitted the appraisal, and the issue with respect to the appraisal was not raised until a year after the trial. [565-566]

A consent decree entered against the Board of Trustees of State Colleges, in a suit in which it was represented by the Attorney General, which declared that a contract for the purchase of a parcel of land by the Board was valid and that certain appraisal requirements had been satisfied precluded the Secretary of Administration from asserting alleged deficiencies in the appraisal of the property in a subsequent action brought by the seller of the land to compel the Secretary to allot funds for the purchase. [566-567]

Where a parcel of land used for educational purposes was appraised in connection with a voluntary purchase rather than a taking by eminent domain, the fact that the depreciated reproduction cost of the special purpose buildings on it was added to the fair market

value of the land for a residential use, inconsistent with continued use for educational purposes, did not make the appraisal insufficient to satisfy the requirement of St. 1971, c. 976, § 2B, that an "independent appraisal" be made before funds appropriated for the purchase of the property were paid.  [567-570]

BILL IN EQUITY filed in the Superior Court on December 6, 1973.

The suit was heard by *Moriarty*, J., on a statement of agreed facts.  A motion for relief from judgment was also heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Edward J. Barshak,* Special Assistant Attorney General (*Peter L. Puciloski* with him) for the defendant.

*Kenneth H. Zimble (Joel Z. Eigerman* with him) for the plaintiff.

BRAUCHER, J.  In 1971 the Board of Trustees of State Colleges (Board) agreed to purchase the plaintiff's land and buildings for $4,200,000.  The Secretary of Administration and Finance (Secretary) refused to make funds available for the purchase, and we affirm a judgment declaring that the contract is valid and that neither the Governor nor the Secretary is authorized to decline, as matter of discretion, to allot the necessary funds.  We hold:  (1) No abuse of discretion is shown in the denial of the Secretary's motion under Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974), for relief from the judgment appealed from.  (2) The Secretary is precluded by a prior decree from asserting alleged deficiencies in the appraisal of the property.  (3) The appraisal conducted by the Secretary satisfied the requirement imposed by St. 1971, c. 976, § 2B.

The contract in question was executed on July 29, 1971, subject to the enactment of a capital outlay bill including an item for the appropriation of sufficient funds and to the meeting of "all conditions contained in such item." By St. 1971, c. 976, the Legislature appropriated suffi-

564                                    369 Mass. 562

Trustees of Stigmatine Fathers, Inc. *v.* Secretary of Adm'n & Fin.

cient funds, but § 2B[1] forbade payment for land or land with buildings thereon "until at least one independent appraisal of the value thereof has been made by a qualified disinterested appraiser." The Secretary appointed an appraiser, and in May, 1973, he submitted a report that the value of the property was $4,340,000. The report was impounded and withheld from the plaintiff until after the plaintiff sued the Board. In August, 1973, the Secretary announced publicly that the Commonwealth would not purchase the plaintiff's property because "he had concluded that the site was inappropriate" for the Massachusetts College of Art.

The plaintiff then demanded performance of the agreement and sued the Board, which was represented by an assistant attorney general. A final decree was entered by consent on November 20, 1973, declaring that the 1971 agreement was valid and binding and of full force and effect and that all of its conditions, "including those provisions relating to acts of appropriation and any requirement for appraisal thereunder," had been fulfilled. The Secretary nevertheless refused to allot the appropriated funds.

The plaintiff thereupon brought the present action. In his answer the Secretary admitted that, at the request of the Board and with the Secretary's approval, an independent appraisal was conducted, and that the value set forth in the appraisal was $4,340,000. The case was submitted to a judge of the Superior Court on a statement of agreed facts. The judge considered three defenses as-

---

[1] "Section 2B. Any land or land with buildings thereon for the acquisition of which an appropriation is made in section two of this act shall be acquired by purchase or by eminent domain under chapter seventy-nine of the General Laws; provided, that no payment shall be made for the purchase of any such property until at least one independent appraisal of the value thereof has been made by a qualified disinterested appraiser; and, provided further, that the cost of such appraisal or appraisals shall be charged to said item of appropriation."

serted by the Secretary, but did not consider any issue as to the sufficiency of the appraisal. He ruled that the Secretary was bound by the prior decree against the Board, and was estopped from raising any issue as to the validity of the agreement, and that neither the Governor nor the Secretary was authorized to decline, as matter of discretion, to allot the funds necessary to carry out the contract in accordance with its terms. He ordered the entry of a judgment so declaring.

The Attorney General declined to prosecute an appeal on behalf of the Secretary, and the time for appeal was extended until after our decision in *Secretary of Administration & Fin.* v. *Attorney Gen.*, 367 Mass. 154 (1975), upholding the Attorney General's power so to decline. A successor Attorney General then allowed the Secretary to proceed with the appeal and appointed a special assistant attorney general to pursue it. By motion under Mass. R. Civ. P. 60 (b) (6), the Secretary in July, 1975, sought relief from the judgment, asserting for the first time that the appraisal report was unacceptable on its face as a fulfilment of the condition contained in St. 1971, c. 976, § 2B. He now appeals both from the judgment and from the denial of his motion for relief from it. His sole substantive contention is that the appraisal is insufficient.

1. *Abuse of discretion.* The appeal from the judgment does not bring to us any issue with respect to the appraisal, since no such issue was presented in the Superior Court. An issue cannot be raised for the first time before this court. *Milton* v. *Civil Serv. Comm'n*, 365 Mass. 368, 379 (1974).

A motion under Rule 60 is addressed to the judge's discretion, and no clear abuse of discretion in denying the Secretary's motion is shown. *Schulz* v. *Black, post,* 958 (1975). *Farmers Co-operative Elevator Ass'n Non-Stock of Big Springs, Neb.* v. *Strand,* 382 F.2d 224, 232 (8th Cir.), cert. denied, 389 U.S. 1014 (1967). The issue sought to be asserted was plainly an afterthought. The Secretary had been contesting the purchase for more than

two years on a variety of grounds, all now abandoned, without raising the point. He had failed to disclose the appraisal to the plaintiff; when it was disclosed, the Board, represented by an assistant attorney general, had consented to a decree that it satisfied the statute. The Secretary's answer admitted the appraisal, and no issue was raised with respect to it until a year after trial.

The Secretary contends that the judge did not exercise his discretion in denying the motion, but erroneously ruled as matter of law that the point was concluded by the prior decree. The transcript of the hearing on the motion does not show this, but it does not clearly show the contrary. Rather than remand for clarification, delaying final disposition still further, we therefore turn to the effect of the prior decree.

2. *Issue preclusion.* The judge ruled that the Secretary was bound by the decree against the Board, and the Attorney General thought the ends of government would not be advanced by an appeal. See *Secretary of Administration & Fin.* v. *Attorney Gen.*, 367 Mass. 154, 156-157 (1975), where we characterized the judge's opinion as "well reasoned." We now decide that it was also correct.

We recognize that it would be an unwarranted fiction to treat all the branches of State government as a single unit for all purposes. Our books are full of cases of litigation between governmental agencies. But governmental agencies, like other litigants, are subject to "the wholesome principle which allows every litigant one opportunity to try his case on the merits, but limits him, in the interest of the public, to one such opportunity." *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968), quoting from *Jenkins* v. *Atlantic Coast Line R.R.*, 89 S.C. 408 (1910). "The crucial point is whether or not in the earlier litigation" the representative of the Commonwealth "had authority to represent its interest in a final adjudication of the issue in controversy." *Sunshine An-*

*thracite Coal Co.* v. *Adkins,* 310 U.S. 381, 402-403 (1940).

There is no doubt that the Board was a proper party defendant in the plaintiff's first suit, and the Commonwealth was not an indispensable party. *G & M Employment Serv. Inc.* v. *Commonwealth,* 358 Mass. 430, 433-434 (1970), appeal dismissed sub nom. *G & M Employment Serv. Inc.* v. *Department of Labor & Indus.,* 402 U.S. 968 (1971). The Board could not by its own action foreclose the question of its authority to bind the Commonwealth. But it was represented by the Attorney General. G. L. c. 12, § 3. He is empowered "to set a unified and consistent legal policy for the Commonwealth." *Secretary of Administration & Fin.* v. *Attorney Gen.,* 367 Mass. 154, 163 (1975). The decree was no less conclusive because it was entered by consent. *Nantucket Express Lines, Inc.* v. *Wood's Hole, Martha's Vineyard & Nantucket S.S. Authority,* 350 Mass. 173, 176, cert. denied, 384 U.S. 952 (1966).

This problem has recently been reconsidered in the Restatement (Second) of Judgments § 80, Comments e, f (Tent Draft No. 2, 1975). The Reporters' Note to these comments includes the following, with abundant citation of authority: "A central issue is whether relief can be obtained against the government but, in avoidance of the sovereign immunity doctrine, through the device of a suit against an official. . . . When an action may be maintained through this device, the official concerned participates in his capacity as such, with preclusive effects on the government and the official's successors."

3. *Sufficiency of the appraisal.* What we have said is sufficient to dispose of this case. But the possibility remains that relief might be sought from the decree in the plaintiff's suit against the Board. The parties have fully argued the question whether the appraisal satisfied the requirement imposed by St. 1971, c. 976, § 2B. We think we should finally lay it to rest.

The statute required an "independent appraisal . . . by a qualified disinterested appraiser." No contention is made that the appraisal was not "independent" or that the appraiser was not "qualified" and "disinterested." The contention is rather that the appraisal was so irrational as to be no appraisal at all. The implication is that the agreement may call for payment of a vastly inflated price for the property.

The Secretary attacks the appraisal on three distinct grounds: (1) The land was zoned "Open Space," but the appraiser proceeded on the assumption that it could be subdivided into one-acre lots for residential purposes, without discount for uncertainty of rezoning. See *Skyline Homes, Inc.* v. *Commonwealth,* 362 Mass. 684, 686 (1972), and authorities cited. (2) A tract of 182 acres was valued on the basis of a hypothetical subdivision, in violation of the rule against consideration of "speculative future development." *Tigar* v. *Mystic River Bridge Authority,* 329 Mass. 514, 518 (1952). (3) It was improper to add together (a) reproduction cost less depreciation for educational buildings and (b) land value for a residential use which would require demolition of the buildings.

The first two grounds are not fairly open, since they were not presented to the judge in connection with the motion under Rule 60. Moreover, we do not take judicial notice of town by-laws, the record does not show what uses were permitted in an "Open Space" zone, and the appraisal report does not negate a discount for any expense and risk of rezoning. A judge has reasonable discretion as to consideration of residential subdivision as a possible use bearing on land value. *Aselbekian* v. *Massachusetts Turnpike Authority,* 341 Mass. 398, 400-401 (1960).

There remains the Secretary's argument that there was clear error in the addition of an inflated land value for residential purposes to the inconsistent valuation of the existing structures. He cites a number of cases holding that valuations for incompatible uses may not be added

together. More nearly in point are cases holding that, where "the highest and best use is for the land to be employed for a different purpose, no substantial value can be accorded to the improvement which has to be torn down." *Matter of County of Nassau (Lido Boulevard)*, 43 App. Div. 2d 45, 51 (N.Y. 1973). Cf. *Frantz* v. *Commissioners of Anoka County*, 297 Minn. 488, 490 (1973); *Irv-Ceil Realty Corp.* v. *State*, 43 App. Div. 2d 775, 776 (N.Y. 1973); *Albany Country Club* v. *State*, 37 Misc. 2d 134, 142 (1962), modified on other grounds, 19 App. Div. 2d 199, modification aff'd 13 N.Y.2d 1085 (1963).

The appraisal in the present case was required by statute in connection with a voluntary purchase rather than a taking by eminent domain, and rules of evidence and damages are not directly applicable to it. Cf. G. L. c. 79, §§ 7A, 12. The purpose was to provide a check on the judgment of the acquiring agency, to verify the reasonableness of a negotiated value. We think it was sufficient if the appraisal provided the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs. Cf. G. L. c. 30A, § 11 (2).

Applying that standard, we think the appraisal was sufficient. The Secretary employed an engineer to estimate the value of the improvements, and appointed two appraisers to evaluate the entire property, taking into account the engineer's report. The Secretary thus contributed to the making of an appraisal which added together separate values for land and for improvements. When one of the two appraisers failed to act, the Secretary refused to appoint a successor. The remaining appraiser concluded that the highest and best use of the property was "for its continued use as an educational facility," that it was a special purpose property, and that the land must be valued at its fair market value and the depreciated value of the existing structures added. This analysis was in accord with our cases. *Commonwealth* v. *Massachusetts Turnpike Authority*, 352 Mass. 143, 147

(1967). *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authority,* 335 Mass. 189, 194-196 (1956). It was also consistent with the stated purpose of the Commonwealth to use the property for the Massachusetts College of Art.

The Secretary seems to contend that the land should have been valued on the basis of what it "added to the value of the structures for such highest and best use of the premises as a school," but he does not explain how that was to be done. There were no sales of comparable property, and there was no income to be capitalized. We think it was proper to add to the value of the improvements the fair market value of the vacant land, with an appropriate deduction for demolition of existing buildings to make the land vacant. Inevitably, such a fair market value may take account of other uses than educational use, some of them inconsistent with educational use, but there is no inflation of land value if educational use is the highest and best use. Cf. *Wilmington Housing Authority* v. *Greater St. John Baptist Church,* 291 A.2d 282, 285 (Del. 1972); *Orleans Parish School Bd.* v. *Paternostro,* 236 La. 223, 231 (1958); *Baltimore* v. *Concord Baptist Church, Inc.,* 257 Md. 132, 142 (1970); *Keator* v. *State,* 23 N.Y. 2d 337, 340 (1968); *Assembly of God Church of Pawtucket, R.I.* v. *Vallone,* 89 R.I. 1, 11 (1959); 2 Orgel, Valuation Under Eminent Domain § 190 (2d ed. 1953).

*Judgment affirmed.*
*Denial of motion affirmed.*