# KATHLEEN PIELECH & another[1] *vs.* MASSASOIT GREYHOUND, INC.[2,3]

No. 97-P-1677.

Bristol. January 6, 1999. - July 21, 1999.

Present: WARNER, C.J., JACOBS, & SPINA, JJ.

*Statute,* Retroactive statute. *Practice, Civil,* Relief in the nature of certiorari, Relief from judgment. *Due Process of Law,* Retroactive application of statute.

The clear language of the retroactivity provisions of St. 1997, c. 2, were applicable, as a matter of law, to a case in which a petition for certiorari was pending in the United States Supreme Court at the time the statute became effective; consequently, plaintiffs' motion under Mass.R.Civ.P. 60(b)(6) seeking relief from summary judgment dismissing their claims arising under G. L. c. 151B, § 4(1A), should have been allowed. [324-327]

In a civil action, the judge's entry of summary judgment in favor of the defendant on the plaintiffs' claims for intentional infliction of emotional distress and violation of G. L. c. 93, from which the plaintiffs did not perfect an appeal, was not properly the subject of a motion pursuant to Mass.R.Civ.P. 60(b)(6), seeking relief from the dismissal of those claims. [327]

This court declined to consider a constitutional issue insufficiently raised on the factual record in the court below. [327-328]

CIVIL ACTION commenced in the Superior Court Department on June 15, 1993.

Following a decision of the Supreme Judicial Court, 423 Mass. 534 (1996), a motion for relief from judgment was heard by *John J. O'Brien,* J.

*Harvey Weiner (Michael P. Duffy* with him) for the plaintiffs.
*Joel A. Kozol* for the defendant.

---

[1] Patricia Reed.

[2] The defendant states in its brief that its correct name is Massasoit Greyhound Association, Inc.

[3] We acknowledge the filing of amicus briefs by the American Jewish Congress and by the Anti-Defamation League.

The following submitted briefs for amici curiae:

*A. Van C. Lanckton & Merle Ruth Hass* for American Jewish Congress.

*Howard A. Brick, Michael N. Sheetz, & Laurin Levin* for The Anti-Defamation League.

JACOBS, J. By complaint filed in 1993, the plaintiffs asserted that their employment as part-time parimutuel clerks was "terminated" by their former employer, Massasoit Greyhound, Inc. (Massasoit), because they "refused to work on Christmas Day [of 1992] for religious reasons." Their complaint contained counts alleging (1) unlawful discrimination under c. 151B, § 4(1A); (2) violation of G. L. c. 93, § 102 (the Massachusetts Equal Rights Act); and (3) intentional and negligent infliction of emotional distress. After the allowance of Massasoit's motion for summary judgment by a Superior Court judge, the Supreme Judicial Court, in *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 540 (1996), cert. denied, 520 S. Ct. 1131 (1997), construed § 4(1A) as violative of the establishment clause of the First Amendment to the United States Constitution and affirmed the judgment in favor of Massasoit.

Soon thereafter, a bill was introduced in the Legislature, the effect of which "would be to change the construction that the court gave to § 4(1A) in its *Pielech* opinion so that the protection of § 4(1A) would not be limited 'to persons whose practices and beliefs mirror those required by the dogma of established religions.' " *Opinion of the Justices*, 423 Mass. 1244, 1245 (1996), quoting from *Pielech* v. *Massasoit Greyhound, Inc.*, supra at 539-540. In response to a question submitted by the Legislature, the Supreme Judicial Court concluded that § 4(1A) with the proposed amendment would not violate the Massachusetts and Federal Constitutions. *Id.* at 1246-1247. The proposed amendment was subsequently enacted as St. 1997, c. 2, effective February 27, 1997. Section 3 of St. 1997, c. 2, provides:

> "The provisions of section two of this act shall apply to all claims arising not earlier than three years before the effective date of this act which have not yet been filed, and to all other claims pending before the commission against discrimination or a court on the effective date of this act, including claims upon which final judgment or judgment after rescript has not entered or as to which a period to file

an appeal, certiorari petition, petition for rehearing or similar motion has not expired on said effective date."

While the amendment was pending, the plaintiffs sought and received from the United States Supreme Court an extension to February 10, 1997, for the filing of a petition for certiorari. They filed their petition on February 8, 1997. On the day following the enactment of the amendment, the plaintiffs initiated a separate action (the new case) in the Superior Court under G. L. c. 151B, § 4(1A), as amended by St. 1997, c. 2, repeating the discrimination claims of their 1993 complaint.[4]

After their petition for certiorari was denied on March 17, 1997, the plaintiffs returned to the instant case on March 28, 1997, by filing an "emergency" motion pursuant to Mass.R. Civ.P. 60(b)(6),[5] 365 Mass. 829 (1974), in which they sought relief from the summary judgment dismissing their original complaint. On the same day, they filed a motion to amend their original complaint by substituting the amended § 4(1A) and adding a count under Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e (1994), accompanied by a "First Amended Complaint" that repeated verbatim the counts under G. L. c. 93, § 102, and for intentional and negligent infliction of emotional distress contained in their original complaint. On April 25, 1997, the rule 60(b)(6) motion was denied by the same Superior Court judge.

1. *Retroactivity.* In his decision on the rule 60(b)(6) motion, the judge concluded that the retroactivity provision of the amended statute does not apply to this case because the "plaintiffs did not have a 'claim pending' as of the effective date of the [amendment], February 27, 1997." The judge also wrote: "Moreover, this court's decision comports with the traditional understanding that judgments are final. Finally, the plaintiffs are free to attempt to vindicate their rights in another action which, consequently, they are doing."

It is well established that ordinarily "[a] motion under Rule 60 is addressed to the judge's discretion," *Trustees of the Stig-*

---

[4]On the same day, February 28, 1997, the plaintiffs filed a motion to reopen and amend their original complaint to assert a claim under § 4(1A), as amended. The proferred "amended complaint" states only a claim under c. 151B.

[5]Massachusetts Rule of Civil Procedure 60(b)(6) provides for relief from a final judgment for "any . . . reason justifying relief from the operation of the judgment."

*matine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976), and "appellate courts will show marked deference to the lower court's resolution of such a motion." *Chiu-Kun Woo* v. *Moy*, 17 Mass. App. Ct. 949 (1983). Here, however, the judge's ruling as to retroactivity is purely one of law and does not reflect an exercise of discretion. It may, therefore, be reviewed for correctness as matter of law, without deferential weighting. See *Stilwell* v. *Travelers Ins. Co.*, 327 F.2d 931, 933 (5th Cir. 1964); *Cuzzi* v. *Board of Appeals of Medford*, 2 Mass. App. Ct. 887, 888 (1974) (while a judge's denial of a discretionary motion ordinarily does not present an issue of law on appeal, "the rule is otherwise where the denial is based on a ruling that [the judge] was without power to grant it"). See also 11 Wright, Miller & Kane, Federal Practice & Procedure § 2872 (1995).

The pertinent provision of the retroactivity clause makes the amendment applicable to "all . . . claims pending before . . . a court on [February 27, 1997], including claims . . . as to which a period to file [a] . . . certiorari petition . . . has not expired on said . . . date." We construe this provision solely to determine whether it encompasses the instant action, leaving to another time the question of its constitutionality.

The relevant status of this action as of February 27, 1997, was that the summary judgment dismissing the plaintiffs' complaint had been affirmed by the Supreme Judicial Court, and a timely petition for certiorari had been filed by the plaintiffs with the United States Supreme Court. In deciding that the amended version of § 4(1A) was inapplicable to the case at bar, the judge concluded that the plaintiffs did not have a "claim pending" on February 27, 1997. Relying on case law and a dictionary definition, he determined that "a claim is the set of operative facts that gives rise to an enforceable right and certiorari is not a matter of 'right' but, instead, rests in the sound discretion of the court." Whatever might be the validity of that analysis in other circumstances, it is here inapposite. One need not go beyond the plain language of the retroactivity clause to determine that among the included claims to which the amendment is to apply is one "as to which a period to file [a] . . . certiorari petition . . . has not expired." In the context of that retroactivity language, it is of no moment that certiorari may be a matter of discretion rather than right. The certiorari petition procedure described merely provides one of several

time lines for determining the claims to which the amended § 4(1A) applies. Given that definitional function, it would be inconsistent to treat a claim in a case as pending for purposes of the retroactivity provision until the time for filing a petition for certiorari has expired but as not pending when a certiorari petition properly has been filed within that time.

Even if we thought there to be ambiguity in the retroactivity provision, and resorted to attempting to ascertain the intent of the Legislature, we would again arrive at retroactive application to this case. That intent is "ascertained from all [the words of the statute] . . . considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). The order by which the House of Representatives brought the question of the constitutionality of the amended version of § 4(1A) to the Supreme Judicial Court makes clear that the amendment was enacted in response to that court's *Pielech* opinion, see *Opinion of the Justices*, *supra* at 1245, and the amendment itself speaks of an "intention . . . immediately to restore the right of individuals to be free from discrimination in the workplace based on their sincerely held religious beliefs." St. 1997, c. 2, § 1. In *Opinion of the Justices*, *supra*, the court not only recognized the broad remedial objective of the amended § 4(1A), but also indicated that the constitutionality of the retroactivity provision (§ 3) "is one that can be raised in pending litigation." *Id.* at 1247-1248. No great inferential leap is required to conclude that the court believed that it was the intention of the Legislature to encompass the plaintiffs' action in the retroactivity provision. This point was conceded by Massasoit in its opposition to the rule 60(b) motion in the Superior Court, which states that the retroactivity clause was an attempt by the Legislature "to create a new cause of action specifically for the plaintiffs."

While "changes in the law alone would not justify reopening [a final] judgment," *Galvin* v. *Welsh Mfg. Co.*, 382 Mass. 340, 344 (1981), the clear language of the retroactivity provision coupled with the resolve of the Legislature to give the plaintiffs their day in court constitute the "compelling or extraordinary circumstances" required for relief under rule 60(b) in "the interests of justice." *Winthrop Corp.* v. *Lowenthal*, 29 Mass.

App. Ct. 180, 188-189 (1990). See *Bromfield* v. *Commonwealth*, 400 Mass. 254, 257 (1987).[6]

2. *The other claims.* In his decision ordering summary judgment for Massasoit, the judge ruled that the plaintiffs' c. 93 claim fell within the c. 151B discrimination allegation and also concluded that "[Massasoit's] actions are not severe enough to constitute a viable claim for intentional infliction of emotional distress." In *Pielech*, the court did not address the emotional distress claims and briefly noted that the plaintiffs' treatment of the c. 93 issue was insufficient appellate argument. Accordingly, those claims are foreclosed by the general proposition that rule 60(b) is not a mechanism for addressing errors that could have been the subject of an appeal. See *Amerada Hess Corp.* v. *Garabedian*, 416 Mass. 149, 156 (1993). See also *Bromfield* v. *Commonwealth*, 400 Mass. at 257. In any event, given our decision and the broad remedial provisions of c. 151B, § 9, which include "actual and punitive damages" and "reasonable attorney's fees and costs," these other claims of the plaintiffs are essentially duplicative of their discrimination claim. Compare G. L. c. 93, §§ 102(*b*) & (*d*). No injustice derives from treatment of those claims as closed. The plaintiffs' motion to amend their original complaint by adding a count under Title VII also appears to be duplicative of the c. 151B claim, but, in any event, the disposition of that motion is left to the Superior Court on remand.

3. *Constitutionality.* The plaintiffs maintain that retroactive application of G. L. c. 151B, § 4(1A), as amended, does not violate any constitutional right of due process. Massasoit, noting the opinion of the Supreme Judicial Court that "the answer to the due process of law question will depend on the facts of each case," *Opinion of the Justices*, 423 Mass. at 1247, argues that the factual record before us is insufficient to determine the constitutionality issue. We agree with the latter contention.

---

[6]To the extent that Massasoit relies on the judge's denial of the rule 60(b) motion on the alternative grounds that "the plaintiffs are free to attempt to vindicate their rights in another action which, consequently, they are doing," it is at least arguable that the "new case" having been filed in 1997, more than three years after the alleged discrimination, is not encompassed by the retroactivity clause and is time-barred as maintained by Massasoit in that action. Conversely, if the new case were determined not to be time-barred under the theory that the claims on which it is based fall within the retroactivity provision, the plaintiffs would be placed in essentially the same position as our decision puts them.

"The rule that guides judges in deciding whether a retroactive statute violates due process rights . . . is that only statutes 'which, on a balancing of opposing considerations, are deemed to be unreasonable, are held to be unconstitutional.' *American Mfrs. Mut. Ins. Co. v. Commissioner of Ins.*, 374 Mass. 181, 189-190 (1978)." *Opinion of the Justices, supra* at 1248. The criteria for evaluating the reasonableness of a retroactive statute include three considerations: "the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights affected retroactively; and the extent or scope of the statutory effect or impact." *Leibovich v. Antonellis*, 410 Mass. 568, 577 (1991). While the first consideration readily could be addressed on the basis of the record before us, the other considerations require examination of factual questions to which our record does not provide adequate answers. Analysis of "the nature of the rights affected retroactively" necessarily involves an examination of whether Massasoit "acted in reasonable reliance upon the previous state of the law." *Liebovich v. Antonellis, supra* at 578. That inquiry involves a determination whether Massasoit relied on G. L. c. 151B, § 4(1A), prior to its amendment and as previously construed by the Supreme Judicial Court and whether such reliance was reasonable. Also implicated is the question whether Massasoit would have acted differently, by way of accommodation, had it known that the amendment would be enacted. See *Liebovich v. Antonellis, supra* at 578 & n.7. With respect to the third consideration involving the impact of retroactive application, we are unable to determine the number of claims under § 4(1A) that may have arisen in the three years prior to February 27, 1997, and the number of "other claims pending before the commission against discrimination or a court" on that date. While it may be reasonable to assume that the range of cases retroactively affected by the amended version of § 4(1A) will be narrow, see *Liebovich v. Antonellis, supra* at 579-580, that determination is better made after a hearing.

Accordingly, we reverse so much of the rule 60(b)(6) motion as denied the plaintiffs relief from the judgment on their claims under c. 151B, § 4(1A), and remand the matter to the Superior Court for further proceedings on the plaintiffs' complaint, treated as stating only a claim under G. L. c. 151B, § 4(1A), as amended by St. 1997, c. 2, and for the determination of such other matters as may properly come before the court. The question of the constitutionality of the retroactivity provisions of

§ 3 of St. 1997, c. 2, is reserved, in the first instance, to that court.

*So ordered.*